is number 14-1528, 14-1548, 14-1906, 151878, 152277, United States v. Enrico Ponzo. Thank you. Good morning, and thank you for hearing this case, and thank you for hearing it so quickly. If I could, I'd like to reserve four minutes for rebuttal. You may. Thank you. The case law says that in the absence of an objection before trial, a defendant must show an actual conflict of interest. And that's defined as a conflict of interest that adversely affects counsel's performance, as opposed to a theoretical division of loyalties. So our defendant here objected. He made it loud and clear that he was objecting, so he's not held to the higher standard of a non-objecting defendant. And I would like to remind the court as well that the district court was predisposed to deny his request for new counsel. The court said right off the bat, I'll tell you right now, Mr. Ponzo, I'm not giving you another lawyer. And he stood by that. Despite our lower standard, we actually have shown an actual conflict of interest, and we've shown adverse impact. So let's look at the situation. Mr. Clark murdered two people in one night. He tried to kill Mr. Ponzo, but he killed Mr. Ponzo, Jr. instead. Later that night, he's pulled over for a traffic violation. And he still has the guns. And he still has the ski masks. And he still has the police badge in his car. He's not going back to jail. No way. So he makes the decision to shoot the trooper that stopped him. And he killed Trooper Chabonier. So you're appointed to represent him in the appeal of his conviction for the murder of Trooper Chabonier. Years later, you're appointed to represent the very person he tried to kill that night. And your current client wants you to accuse your former client of trying to kill him and of actually killing somebody else. Is that going to make you a little uncomfortable? I know it would me as a lawyer. It would make me uncomfortable if I was that former client. And it would make me uncomfortable if I was the current client. This isn't a situation where the defendant was asking his lawyer to accuse a former client of some unrelated OUI. This was very serious charges. And keep in mind, too, charges that that former client could face prosecution for. Now, the government says, no, no, no. It wasn't related. Yes, it was. It was related. Mr. Ponzo was on trial for conspiracy to murder Joseph Souza and Stephen Rossetti, the very Joseph Souza and Stephen Rossetti's conduct against Mr. Ponzo that night was related to the case. How then can the government say, oh, but Clark's actions that night were not related? No. This is related to the case that was about to be tried. And to test my understanding and my And they said, no, no, no. That client, that lawyer cannot represent that current client in these circumstances. And I know the government is going to say, well, an ethical violation doesn't make for a conflict of interest. But it does here. It does in this case. And even though we don't have to, we have shown how it adversely affected counsel's performance. He would not accuse his former client of trying to kill his current client. But the government pointed out that that could be explained by a strategic trial decision that his trial attorney made concerning trying to keep Mr. Ponzo's affiliation with La Cosa Nostra out of that relationship. And he made a strategic decision not to do it as opposed to it being affected by it. I mean, isn't that a logical explanation for that decision? That's a logical explanation, but it has no applicability in a conflict of interest analysis. If that reasonable tactical decision only comes in a Strickland analysis, and we don't reach that. The case law is clear that, I can quote, the showing by a defendant of an adverse, burdensome, than required to establish an effective assistance of counsel claim. Right, but you have to show adversely affected. And if the trial attorney can make an argument, you know, a perfectly reasonable argument for why he wasn't adversely affected because he made this, I think it was a pretrial decision to file a motion to eliminate to keep that testimony out. I know. How then can you show adversely affected when the trial attorney was putting forward a positive aspect for keeping the testimony out? Mr., that decision meant there was no defense at all on the flight from justice. He couldn't show, Mr. Ponzo wanted his jury to know that he fled because he was in fear for his life. And if a defense had been presented on the unlawful flight, gosh, other charges would have been barred by the statute of limitations. All of the Arizona, marijuana, money laundering. So he was, he was very affected. Can I ask something just basic about, aside from why the attorney did or did not make this defense, could you just explain what the defense is? Was it a duress defense? Was that the idea? The defense to the flight from justice was he was in fear for his life because people were trying to kill him. And just so I understand, that's a duress defense? What is that as a defense? I just don't, I'm just, I'm just legally. At a minimum, it's, it's a defense which would invoke the statute of limitations. No, no, what I'm saying, I have to be somewhere, okay? Now I'm trying to explain, and I'm conceding I was not there. So that's a defense because you're trying to say I'm just an excuse because since of this I was in duress and therefore I didn't have to show? Something like that, yes. Was that arguing to the jury? Well, the government says that his lawyer did argue to the jury that people were trying to kill him, but his lawyer got it wrong. He got it totally wrong. He argued that. But did you ask for instruction about self-defense? No. You did not? No. This wouldn't, I don't think this, a self-defense would have been given in this case. So then I guess. It's more of an explanation of why he fled. And why is the, I guess, why is the explanation legally relevant, that's all? If it's not a self-defense argument? Necessity? It could have been. Did you ask for that instruction or anything? No, the counsel didn't pursue that line of defense at all. And that's what the idea would have been then. He could have done all that. He could have, but he would have had to accuse his former client of trying to kill his current client. Well, can we press that just a little bit more? Is there some case law that says you can flee an indictment rather than seek the shelter and protection of the police? Keep in mind too, he fled years before this 1997 indictment came down. Years before. He didn't even, we can't even say he knew about it, let alone knew about the trials. So is there a case law that says you can flee? The only case law that deals with it is in connection with the statute of limitations saying if you can show that you did not flee because you wanted to avoid justice, then you can invoke the statute of limitations. They do clearly say that. And that's the domino effect. And those cases suggested a reason that counts is fleeing because of fear? What were the cases? It was fleeing because of fear or, I can look at that if you like. I can't recall offhand. But this scenario, my gosh, this is really bad. To have the same lawyer represent Mr. Ponzo when he had represented the person who tried to kill him? And it's definitely, definitely related. Your Honors, I know that Judge Thompson, you have another conflict of interest case pending. And if I can say so, I think this one is way beyond that. This is just so clear to me that you would not want to be in that position. And I'd like you to remand, reverse and remand on that basis. Turning now to another major problem with the case is the verdict form. The verdict form was wrong. It said, for the 924C, possession in relation to the crime of violence. And the judge compounded that because he read the verdict form verbatim to the jury. He said, and as to count three, it says, quote, firearm possession in relation to murder conspiracy. And a place for you to check off not guilty or guilty. So all we have. But he goes on. He does. He does. He goes on and why isn't it fair to read the record there as simply him saying, now I'm directing you to the count in the verdict entitled X. And for that count, I'm instructing you, you have to find the following. He does not, in then instructing them, say you can find possession. He tells them you have to find either use or carry, which is correct. That is correct. So why isn't it legitimate just to read him as, they may have been mistitled. But there's no indication that the judge has informed the jury that they can convict on the basis of possession. That verdict form went with the jury. That was the written form they had. And he's told them the one that says possession requires you to find use or carry. In his later, they were conflicting. What was the conflicting part? Other than the form itself? The form itself and the judge's reading of the form to the jury. But the reading of it is, as to the count entitled possession, you must find carry and use. What's conflicting? That's just telling you, disregard possession, find carry and use. Not really. Not really. If I'm a late juror going back and I have this form that says possession, guilty. How can you say I didn't convict on mere possession? Especially when later down in the form it says, okay, what kind of gun did the defendant use? Oh, well I don't think he used anything, so I'm not going to check. The verdict form that we have says the jury found guilty of possession. It could go either way. But after being properly instructed on what the statute required. Maybe if the judge hadn't also used the word possession. But you can see that the jury was properly instructed during the instructions on what the elements of the charge were, but the caption that was on the verdict form used a different term. It used possession instead of use and care. But as to their instructions, they were instructed as to the proper elements of the statute. You're claiming that it was confusing that the jury verdict form used a different term. In fact, used an old term or the current term, I should say. Well, you know, maybe I wouldn't be here if the judge also hadn't used it, but it didn't come out of the judge's. As he was reading the jury verdict form to them explaining it. Yep. But why wouldn't that mitigate it that he mentioned it? Because what he's telling them is, well, I get the argument. Okay. Turning now to the misuse of grand jury. I hope you will seriously take that into consideration. Mr. Ponzo notified the government that he had two alibi witnesses. Shortly thereafter, the government calls those two alibi witnesses, and the government says, oh, no, we're in the safe harbor, because we have ten new charges. No, the new charges don't relate to what those alibi witnesses could testify to. Mr. Ponzo was already indicted for those crimes. So how can it be proper to call them and question them when they had nothing to do with the new charges? So I, you know, ask you to please take a close look at that for us, because we're limited in our ability to do so. Are you saying that the new charges did not in any way involve any possible testimony from those two witnesses? The new charges involved the Arizona marijuana, money laundering, flight from justice, and intimidation of a witness. And those two witnesses would have had no information about any of those, you're saying? No, all the new charges related to events after Massachusetts, the Arizona period and the Idaho period. But Mr. Ponzo was in touch with the folks in Massachusetts during his period when he was involved in the marijuana business in Arizona. I think there was testimony that he was involved with some. Some. But not these two individuals. They were only called after he listed them as an alibi witness to charges that he had already been indicted for. Is there anything else you're interested in? I could hop around from my prepared order. All the attorneys today have asked us what we're interested in. I would say generally we're interested in what you want to present to us. Ah, okay. I'll be back for my four minutes. Okay. Thank you. May it please the Court. William Glasser for the United States. If I could first try to clear up what the standard is for the conflict of interest issue. The Supreme Court in Nickens said that there's essentially two things that are required for the rule of automatic reversal to apply. First, the defense attorney has to have been appointed against his will, over his objection. And second, the district court has to have failed to make any determination that no conflict existed. And as this court said in De Coligero, where a district judge has determined that no conflict exists, that automatic reversal rule does not apply. In this case, the district judge said, I don't see a conflict. And additionally, the attorney said, I don't see a conflict. The attorney had represented Mr. Clark 12 years earlier, only in the appeal, not at the trial level. And the attorney believed that he could zealously represent Mr. Ponzo. The district court agreed. So the rule of automatic reversal does not apply. Furthermore, Mr. Ponzo argues that that rule only applies, the Nickens rule only applies where it has not been preserved below. However, as this court said in footnote 23 of De Coligero, that rule applies even where the claim has been raised at trial. So the standard here is the straight up Nickens standard, which is that it's the defense has to show an adverse effect, at least an adverse effect. We have this issue of successive representation here. It's possible even that a false Strickland standard applies. But the government can win even if it's simply an adverse effect standard. So turning to the facts here, and how there was not an adverse effect on Mr. Ponzo's representation. Mr. Ponzo argues that Mr. Cunha, his attorney, failed to accuse his former client, Mr. Clark, of committing a crime. Well, that's not correct. He was not willing to have the evidence come in that Mr. Clark had been trying to kill Mr. Ponzo but in fact he was willing to have the evidence come in that Mr. Clark was one of the people who shot Mr. Romano Jr. on that night where they were actually targeting Mr. Ponzo. And over his counsel's objection, the evidence did come in that Mr. Clark was targeting Mr. Ponzo. So the defense that Mr. Ponzo argues his attorney should have made if he had allowed this evidence to come in, that evidence actually did come in. And the jury heard that Mr. Clark was one of the shooters of Mr. Romano Jr. and also heard that the target of that shooting was Mr. Ponzo. So he simply cannot show any... Let's say it was... No, basically it is, but suppose it was a good defense to say I fled injustice because Clark was trying to kill me. Suppose that was a good defense to raise. Do you think it was fully presented here? Your Honor, the defense... Just on that, do you think it was fully presented? No, I don't. Okay, so if it wasn't, then... I just want to understand where the issue actually lies. So if it wasn't fully presented, I take it their argument is that could have been a perfectly legitimate strategic decision or it could have been a decision that was influenced by the conflict, assuming that there was a conflict. And as between the two, if it's at least reasonable to think it wasn't obviously strategic, then might we be able to say there was an adverse impact from the conflict? What's wrong with that? Where does the analysis fall apart? Is it that it was no defense at all to begin with or they didn't do enough to make... I don't know. A couple things, Your Honor. First of all, when I say that defense wasn't presented, the defense was presented that he fled because he was in fear for his life. The question is just, who was he in fear for his life from? That's really the issue. And I don't think that one of those is a more effective defense than the other. In other words, whether he fled because he was in fear for his life from his own faction, there was some evidence of that, whether he fled because he was in fear for his life from the Salemi faction, those things don't really matter. But again, we know that any decision to pursue that strategy wasn't influenced by Mr. Cunha's prior representation of Mr. Clark because Mr. Cunha was willing to have the evidence come in that his former client had committed a crime. It's just a matter of whether that crime was attempting to kill Romano Jr. or attempting to kill Mr. Ponzo. So it's not as if... But why doesn't that make a difference? Your Honor... If there's any legitimacy to this whole fleeing notion, and even if other people were trying to kill him, the cumulative effect, if there's any merit to it at all, seems greater if there's at least one more person, Mr. Clark, who's trying to kill him also. Yes, Your Honor, but the evidence did come in that Mr. Clark was trying to kill him. What we're trying to get at here is... I understand you say it came in, but the question is why was his attorney opposed to having it come in? And was the reason for that the result of a conflict? Your Honor, the reason his attorney was opposed to it coming in is the government wanted it to come in. The government wanted to show, look, Mr. Ponzo is deep into the mafia, that he's actually a target of the other side. And so that actually was helpful to the government. So Mr. Cunha was taking a strategic decision trying to say, no, he was being shot at, but it wasn't because he was actually part of the mafia. And if we were applying Strickland, I would see the point. But you're saying for us to conclude that we apply Strickland would require us to go beyond where the law is now doesn't mean we'd be running into anything that would prohibit us from saying that, but we've never gone that far. Your Honor, I think even under the adverse effects standard... So under the adverse effects standard, does that mean the strategic nature of the call is irrelevant? No, Your Honor, I don't think it does. We don't go all the way to Strickland, and Strickland obviously requires inquiry into strategic decisions, but I think the adverse effect decision has to as well. In order to show that an attorney didn't take steps that the attorney should have, you have to inquire into, well, what was the strategic benefit of taking one turn over the other? In order to show that I was adversely affected by my attorney's representation, you have to look at, well, what were effective strategies that the attorney could take? And was this argued below any of this, the prejudice that resulted? Your Honor, no, because... No, no, by the defendant. The prejudice to him? Yeah. He did, in his motion that he filed the opening day of trial seeking recusal or seeking a new attorney based on this alleged conflict, he did argue, he sort of got into this, but... And then the district court never reached it because it found no conflict? That's correct, Your Honor. Yes, but again, that was a pro se filing. So if we thought there was a conflict, would it follow from that? You'd like us just to affirm on the ground not reached by the district court? No, Your Honor, I think this court can conclude that there is no conflict. I understand that if we thought there was a conflict, you'd like us just to affirm on the ground that, you know, the district court hasn't inquired into whether there was or was not any prejudice to him. We should just look at the facts and conclude what? Conclude that there was no prejudice. He can't show an adverse effect. And I think that makes sense that the district judge wouldn't go beyond finding no conflict and then determine whether or not some theoretical conflict. Well, I understand why it wouldn't, but I'm just sort of how would we make that judgment? No, I think this court can determine he hasn't met his burden of showing adverse effect, and that's essentially what all the case law does. They call it JARO, et cetera. So it's his job to show that there was an adverse effect. He can't show an adverse effect. There's no rule of automatic reversal, and he's not entitled to relief in this case. The ethical rules, they certainly might support his position. I don't think it's certainly not in the record whether or not this is an ethical violation or not, although I know counsel has brought that up today. But the ethical rules, the Supreme Court has said in Nix v. Whiteside, that ethical rules alone are not enough to show a violation. And in this case, the cases really are not as interrelated as Mr. Ponzo would suggest. We're talking about a 15-year gap between Mr. Cooney's representation of Mr. Clark and Mr. Ponzo. And the charges against Mr. Ponzo are very different than the single charge against Mr. Clark, which was the shooting of a trooper that was unrelated. But you're talking about holding the defendant culpable for activity that took place that long ago. That's correct. So there's a connection. I certainly agree, Your Honor. I'm just trying to figure out what's the strategic benefit of limiting his inquiry into prior crimes versus the attempted murder of the guy? I'm not sure I understand the question, Your Honor. You said the attorney wanted to, he was willing to concede that Clark had engaged in prior criminal conduct, but he wasn't willing to deal with the notion that Clark had tried to kill Ponzo. What's the strategic benefit of that? The strategic benefit, Your Honor, is to show that Mr. Ponzo was not actually heavily involved in LaCosa Nostra. Because if Mr. Clark, as a member of the Saleem faction, wanted to kill Mr. Ponzo, that shows that Mr. Ponzo was actually a fairly important guy in the anti-Saleem faction. That was the strategic benefit. So besides this one decision, was there any other affirmative limiting strategy that was demonstrated during the trial? In terms of him not wanting to accuse Mr. Clark of something? No, in terms of him trying to distance Mr. Ponzo from LaCosa Nostra. Oh, yes, Your Honor. Yes, certainly the closing argument was based on the idea that, yes, Mr. Ponzo, he was around these people, but he wasn't actually involved in all of his criminal activity. Yes, that strategy was pursued throughout trial. If I may turn to the second argument. Can I ask one last question? I'm just trying to figure out how, you know, in a Strickland case, we would do,  and we have a general where we just don't do that on appeal, on direct appeal. And I guess I'm just wondering, but I understand they have the burden of comfort. Did they request an evidentiary hearing on any of this below? No, Your Honor. They did not? Again, his attorney believed he could effectively represent him. So this was just Mr. Ponzo's pro se motion on the first day of trial. So am I right that there would be potentially, if the counsel was willing to have done all that because they had a conflict, there could be a 2255 brought subsequently raising this issue? Certainly, Your Honor. This could be an issue for ineffective assistance of counsel on a 2255, definitely. I mean, we don't think it's meritorious, but that's certainly something that Mr. Ponzo could raise. So if I may turn to the error in the verdict form. As the court has pointed out, the instructions to the jury did make clear that actual use or carrying was required. And furthermore, I would just like to emphasize that the 924C count was based on two things of which Mr. Ponzo was convicted in count two. So count two was the by-car count, and those two crimes were the shooting involving Selenny and the shooting involving Cerami. In neither of those crimes was there any evidence that Mr. Ponzo really possessed a firearm. He either actually committed those crimes using or carrying a firearm, or he didn't commit those crimes at all, and therefore he wouldn't be guilty of 924C. So there's really no, even if the jury somehow thought possession was an appropriate consideration, which I don't think is the case, there was no evidence of mere possession. In fact, the evidence was all of using or carrying in relation to a crime of violence. What do you think of the jury's not checking off what weapon? Your Honor, those weapons are not required in order to use or carry a firearm. You can use or carry, for example, a pistol. That's not one of the listed firearms. The machine gun, short-barreled shotgun, those were sensing enhancements under the 1990 version of the statute. They are still, but there are more of them. And so that was a special verdict finding that would have increased the 924C sentence. So the fact that the jury didn't find that he used a machine gun or shotgun has nothing to do with whether or not it concluded that he used or carried a firearm. To briefly address the grand jury issue, I don't want to delve too deeply into this because it is a matter of CFI. Just before you get to it, because you are on 924C. Yes, Your Honor. There's the issue about what the predicate, whether there's a qualifying predicate offense. Yes, Your Honor. So I know this has already come up today before this court, but we're here on plenary review. There are now three circuits that agree that the Johnson does not invalidate the residual clause of 924C. Mr. Ponzo's argument fails on that ground on plenary review. The other issue that he raises is whether or not conspiracy is an adequate predicate for a crime of violence under 924C. Under the force clause. Well, yes. So that sort of applies to both, I think. So under the force or residual clause, conspiracy is enough, is our position. But just keep talking about under the force clause. Sure. Under the force clause, it's certainly a closer question than under the residual clause. I think that's clear. However, we cited Turner, and in Turner, this court said that the object of the offense is the critical question when determining the underlying crime of violence. And when you conspire to commit murder in aid of racketeering, the object is to commit murder.  Now, granted, the conspiracy is complete upon the agreement. But this court has looked at the object and has determined that. In a conspiracy case, we've done that? Yes, Your Honor, in a conspiracy case. That's the Turner case. And that was a little bit different. And Turner doesn't make clear whether it's addressing the residual clause or the force clause. Because I understand that in the residual clause, it's just hard to see how textually, no matter what the underlying offense is, how you can say it's a use of force or a threat of force. Right, well, Your Honor, which of those words do you think it does fit under? Your Honor, I think it would fit under threatened. Because when you conspire to kill someone, there is a threat that you will use force. Now, whether you've actually made a threat to that person, you might not, but there is still a threatened use. Right, you haven't. Right, you haven't threatened that person necessarily, but there is still a threatened use. So wouldn't it just make sense that the residual clause would pick up all the conspiracy? Your Honor, that would certainly be the easiest one. And then Johnson creates a problem for you, because if they've thrown out the residual clause, you're left with a force clause that doesn't really pick up that stuff. Your Honor, yes, I agree that Johnson potentially creates a problem. But the circuits are unanimous so far in concluding that 924C3B is not invalid after Johnson. If I may address the grand jury misuse, this is a matter that's sealed. And I think our sealed filing, the sealed filing that was filed below, adequately lays out the reasons for calling these two witnesses that were notices out by witnesses. And in any event, the formal case makes clear that when new charges are added in the indictment, that's a safe harbor for the government. Now, Mr. Ponzo's contention, well, those witnesses weren't relevant to the later charges that were added. First of all, I think that's factually incorrect with respect to one of them. Again, that can be seen in the sealed filing. But moreover, when a grand jury is called upon to return a superseding indictment, they have to vote on all of the crimes that are alleged in the indictment. And if there's been a prior indictment, the government can rely on hearsay, but the government doesn't have to. The government can actually call live testimony, can call non-hearsay testimony, to establish the charges that were in the underlying indictment. So we think that the Flynn-y safe harbor applies in this case. And if I may, with my remaining time, the issue I would like to address is the confrontation clause issue. I think it's certainly an unsettled area of the law, whether or not the forfeiture by wrongdoing exception would apply to someone who's a fugitive. But I think the simplest way to decide this case is on harmless error. The testimony that came in from a prior witness from the 1998 trial was for a very limited purpose. It was to explain how it was that Mr. Salini, the victim of that first shooting, got from one pancake house to another pancake house that was three-tenths of a mile away. And it was in order to rebut a charge of the defense that Mr. Neely, our witness, was lying. And with respect to these discrepancies between where the phone booth was in one pancake house versus the other, it was brought in for a limited purpose. There was no testimony from Mr. Hildonan, this prior witness who testified in 1998, no testimony about Mr. Ponzo himself. He apparently didn't have any connection to Mr. Ponzo. So it was brought in for a limited purpose. And more importantly, I think, the conviction on that conspiracy count, count one, that was based on, I believe it was nine separate racketeering acts that the jury found Mr. Ponzo committed. So that conviction stands even if the racketeering act related to the Salini murder falls out. Now, he brings up a reply brief that this was also one of the counts underlying the 924C conviction. We'll get back to that. Well, the 924C conviction was based on count two, which was conspiracy to commit murder of Mr. Salini and Mr. Sarami. So as long as the evidence was sufficient on the Sarami shooting, then the Salini shooting can fall by the wayside and Mr. Ponzo's convictions on both count one and count three, so the 924C count. Is this the same issue again about whether if there's a legally insufficient predicate and a factually sufficient one that we can just assume that the jury must have relied on the factually sufficient one? No, Your Honor, I don't think that's the case. If you bracket the issue, am I missing something about how the confrontation clause would taint the offense you're saying we wouldn't have to rely on as a predicate offense? Your Honor, no, I don't think on harmless error review that the court would have to determine whether or not which of those underlying counts the jury relied on. The jury just needed to find one. The evidence was sufficient. We believe on both. We don't think the confrontation clause was violated. The jury only had to find on one, and there are two. Yes, Your Honor. If one of them is legally problematic to rely on. If it was legally problematic, that might be the case, Your Honor. Okay, so you're saying the one that we should not worry about is not legally problematic? That's correct, and that is because the confrontation clause wasn't violated. But that requires us to decide the confrontation clause. Right, but the second half of that answer is that the confrontation, any potential confrontation clause violation would not have affected the jury's verdict, even on the Salimi murder, because of the other evidence against him. So there was evidence tying him to the Salimi murder other than Mr. Mealy's testimony, and the fact that it was merely impeachment evidence on a collateral issue, this attempt to impeach Mr. Mealy. I understand it's convoluted. I apologize for any confusion. I thank the Court. Thank you. Okay, I want to address some of the things that the government brought up regarding the conflict of interest. First of all, Mr. Ponzo did the only thing he could do as soon as he found out that his lawyer was about to start a trial representing him, having already represented somebody who tried to kill him. Mr. Ponzo did the only thing he could do, and he filed a pro se motion. And the Court heard that motion on the first day of trial. And I encourage you to read. I had those transcripts unsealed, so they're in our appendix. But the Court really was predisposed, because it had already given Mr. Ponzo counsel at a great cost once before. It did not want to do that again. This was not brought to delay trial. It was brought for a horrifying reason. The second thing is I know that an ineffective assistance of counsel claim has to first be brought in the district court. That's not what we're here on. We're here on the Sixth Amendment conflict-free counsel. And the record is sufficient for you to address that. What should we do if we thought it isn't? If you think I lose on that issue? No, you said the record is sufficient for us to decide it straight out. What do we do if we thought there's just no development on adverse impact in the record? That's just not enough. What should we do? Does that mean you lose? Does that mean you think we should vacate and renounce? There's an arbitrary hearing? What do the cases suggest we're supposed to do in that situation? Frankly, I don't think you need to find an adverse impact. I understand. Suppose we do. If you do not find an adverse impact. No, suppose we think we have to find one for you to win. And that you don't find it? And that the record is what it is and there was no development below of that issue so the factual findings that might be relevant to it weren't made below. Then you remand. For what? Evidentiary hearing. Are there cases that say that we do that in conflict cases? It brings it dangerously close to an ineffective assistance claim, which this is not. We're not looking. And the government pointed to various cases saying, you know, a defendant gets automatic reversal only when A, B, and C. We're not looking for an automatic reversal. We're here because the record shows, the record establishes the conflict. Whether or not you think the record establishes an adverse impact, that's another thing. I can address that further. The government says there was no impact because counsel did not object when the government asked who was in the car, who was in the car that shot Michael Romano, Jr., and the witness answered David Clark and A and B. Not objecting to a single question is a far, far cry from presenting evidence and exploring it and explaining to the jury that your client was in fear for his life. Far different, Your Honors. A single question when he could have done so much more with it. And was that laid out in your filings below in the conflict request that he did? I guess it was a pro se filing only. It was a pro se filing. Mr. Ponzo did the best that he could do. Of course, counsel wasn't supporting him on this issue. He was on his own. So just to reiterate what Judge Barron keeps asking, what is the remedy you're seeking? New trial with conflict-free counsel. Granted this is a very complicated case with complex issues, but the Constitution demands that a person on trial for such serious crimes can have a lawyer that has no conflict. And, again, ask yourself, would you be uncomfortable with the situation if you were any of those parties? But that just goes to whether there's a conflict. What we keep asking about is the adverse impact. And then what we're supposed to do, and the complicating thing is, I don't quite know if it's uncertain, like in a suppression hearing, and you have fact-finding that would be helpful to figure out whether to suppress, you vacate and remand, you'd hold a suppression hearing. Here, I guess, you vacate and remand, but you'd still have the same counsel, I assume, that you're contending. I don't know how it would work. And I guess I'm trying to get help, but I don't think it should work. You make a good point. Remand would be a weapon. So what do you think should happen? Well, he can't have that same conflicted counsel under any circumstances. That just doesn't work. But the impact is the complete and utter failure to present this defense. And one final note. Flight from justice. You had asked earlier, Judge, if fear for one's life is a defense. And I say yes. I've thought about it. Flight from justice, by its very nature, by its name, is flight to avoid justice. And if you flee because people are trying to kill you, your purpose is not to avoid justice. It's to save your life. Thank you, Mr. Garden. Thank you.